# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:19-CR-00207-01 |
| v. | (Chief Judge Brann) |
| ANTHONY D. BRESSI, | |
| Defendant. | |

## MEMORANDUM OPINION

### SEPTEMBER 6, 2024

## I.    PROCEDURAL BACKGROUND

On June 27, 2019, a grand jury indicted Defendant Anthony Bressi charging him with conspiracy to manufacture, distribute, and possess with intent to distribute controlled substances, and with possession with the intent to distribute controlled substances.[1] In the five years since Bressi entered a plea of not guilty,[2] he has filed a litany of pretrial motions, including several motions to suppress evidence.[3] On February 28, 2023, the Court denied each of those Motions.[4] In July 2023, Bressi's co-Defendant filed a *Daubert* Motion which Bressi joined.[5] Over the next year, the parties litigated that issue, including multiple attempts from the Government to

---

[1]   Indictment, Doc. 16. Also indicted were co-Defendants Damonico Henderson and Terry Harris, who have since pleaded guilty to the conspiracy count. Docs. 327 and 331.

[2]   Bressi Not Guilty Plea, Doc. 28.

[3]   *See, e.g.*, Doc. 150 (Mot. to Suppress statements made to law enforcement); Doc. 186 (Mot. to Suppress evidence from traffic stop); Doc. 188 (Mot. to Suppress evidence from trash pull); Doc. 190 (Omnibus Mot. to Suppress).

[4]   Feb. 28, 2023, Sealed Mem. Op., Doc. 271; Feb. 28, 2023 Ord., Doc. 272; Redacted Mem. Op., Doc. 290.

[5]   Docs. 291, 295.

perfect its expert disclosures and a *Daubert* hearing. The Court was finally able to resolve those issues on July 3, 2024.[6] Under the impression that the matter was finally ready for trial, the Court scheduled a status conference for July 19, 2024 for the purpose of setting a trial date.[7]

Bressi had other ideas. The morning of the status conference, Bressi filed an omnibus Motion seeking to suppress certain evidence, dismiss the indictment, limit the testimony of Government expert Rebecca Patrick, and compel discovery.[8] Bressi's Motion is ripe for disposition and, for the reasons below, is denied in its entirety except as to Bressi's Motion to Suppress Evidence Seized via Grand Jury Subpoena.[9]

## II.    MOTIONS TO DISMISS

Bressi argues three bases to dismiss the Indictment: 1) the Government's failure to honor an immunity agreement; 2) the Government's destruction of crucial evidence; and 3) the unconstitutionality of the Controlled Substances Act. The Court addresses each in turn.

---

[6]    July 3, 2024 Mem. Op. and Ord., Docs. 350-51.

[7]    July 3 Ord. ¶ 5; July 9, 2024 Ord., Doc. 352.

[8]    Doc. 356.

[9]    *See id.* ¶¶ 11-17 (requesting suppression of evidence "due to the misuse of the grand jury subpoena power for general investigative purposes"); Doc. 362, at 6-11 (arguing that "Agent O'Malley's use of the grand jury's subpoena power was integral to the investigation," warranting dismissal of the Indictment or, in the alternative, suppression of evidence resulting from O'Malley's search warrants). The Court reserves judgment as to this issue pending further briefing and a hearing, which will be scheduled by separate Order of Court.

### A.    Immunity Agreement

Bressi alleges that his prosecution is a breach of an immunity agreement between him and the Government:

> On or about June 8, 2019, while his business premises were being searched, Defendant spoke with law enforcement agents and ultimately agreed to deliver a counterfeit controlled substance as part of an immunity agreement. Said agreement included terms that he would not be prosecuted, that his employees would be left alone and not prosecuted[.][10]

Bressi acknowledges that "there was no formal written agreement," but that he had reason to believe such an agreement existed. He suggests that belief was reasonable because 1) when he was previously prosecuted in an explosives case, nobody else was charged, including the purchasers of the explosives and the individual who arranged the deal; and 2) while in federal prison, Bressi had "heard of numerous situations in which pressure was placed on family members to force someone to confess, cooperate or turn themselves in."[11]

First, there are any number of reasons that others may not have been charged in the prior case. Second, whether there are situations where law enforcement may have placed pressure on family members of an individual to secure that individual's confession or cooperation says nothing about whether that happened here, nor is it evidence of an immunity agreement if it did.

---

[10]   Doc. 356, at 41.
[11]   Doc. 362, at 15.

Bressi also asserts it would be illogical for a seasoned criminal like himself to admit to committing the crime of manufacturing and distributing hundreds of kilograms of controlled substances absent an immunity agreement.[12] It could also be said that it would be illogical for a person who recently finished a lengthy prison sentence, particularly a person who was on supervised release, to immediately engage in further criminal activity. Nevertheless, as evidenced by this Court's criminal docket and Bressi's own actions, such things happen all the time.[13]

To the extent that Bressi observes that such courses of action are illogical or foolish, the Court agrees. However, Bressi's conclusory argument that he is not a fool or that he did not engage in foolish behavior is insufficient.[14] Bressi's Motion to Dismiss the Indictment for breach of an immunity agreement is denied.

### B.    Destruction of Evidence

Dismissal of an indictment for the failure to preserve potentially useful evidence is an extreme sanction, only appropriate where the Government engages in "shocking, outrageous, and clearly intolerable" conduct which renders the trial fundamentally unfair.[15] Bressi argues that dismissal of the Indictment is warranted

---

[12]   *Id.*

[13]   The Court notes that this is true even if Bressi is innocent of these charges. Bressi was previously arrested and convicted for Manufacturing Explosives Without a License. *United States v. Bressi*, No. 4:95-CR-252 (M.D. Pa.). He was later convicted of Conspiracy to Manufacture a Controlled Substance while on pretrial release awaiting trial on the explosives charge. *United States v. Bressi*, No. 4:96-CR-238 (M.D. Pa.).

[14]   *See U.S. v. Thompson*, 25 F.3d 1558, 1562-63 (11th Cir. 1994) (conclusory statement that immunity agreement existed insufficient).

[15]   *U.S. v. Henry*, 842 Fed. Appx. 809, 815 (3d Cir. 2021) (collecting cases).

because the Government "engaged in the destruction of crucial evidence in this case."[16] Such evidence includes 1) substances which were not sampled or tested by the Pennsylvania State Police drug lab;[17] 2) office equipment, files, and other documentation including evidence of SHIVA's consulting work;[18] 3) Bressi's emails;[19] and 4) surveillance footage.[20] The Court addresses each in turn.

*First*, as discussed in its Memorandum Opinion regarding Bressi's *Daubert* Motion, the failure to test or preserve full, unopened containers was not a ground to exclude an expert opinion.[21] Similarly, it is not a basis upon which to dismiss an indictment. Rebecca Patrick testified that it would have been impossible to store all the chemicals at her laboratory.[22] "[D]estruction of evidence in accordance with an established procedure precludes a finding of bad faith absent other compelling evidence."[23] As the Court noted in its prior Opinion, Bressi can argue at trial that the sealed containers did not contain the substances advertised on their labels.[24] He can also cross-examine Patrick and other Government witnesses regarding their practice of disposing of these substances. But Bressi has not carried his burden to show bad faith, much less that the destroyed evidence is exculpatory.

---

[16]  Doc. 356 ¶ 45.
[17]  *Id.* ¶ 45.
[18]  *Id.* ¶ 46.
[19]  *Id.* ¶¶ 47-48.
[20]  *Id.* ¶ 49.
[21]  July 3, 2024 Mem. Op., Doc. 350, Section V.C.1.
[22]  *Daubert* Hr'g Tr., Doc. 338, 124:22-125:2.
[23]  *U.S. v. Deaner*, 1 F.3d 192, 200 (3d Cir. 1993).
[24]  *Supra* n.21.

*Second*, the Government has indicated that it has not destroyed any other evidence recovered from SHIVA or Bressi's home.[25] Rather, it has preserved all of the evidence it recovered—absent the chemicals discussed above—which remains available for Bressi to inspect. Files, equipment, or other personal effects which were not recovered by the Government were left at the premises, which Bressi had been renting. Disposition of the properties was then left to the landlords. Bressi apparently faults the Government for not taking custody of and preserving the entirety of his possessions. However, the Government has no such obligation.

*Third*, Bressi avers that he "repeatedly offered the Government access to his email accounts, as well as SHIVA's, yet the Government declined that access and failed to preserve those emails which are now irretrievably lost."[26] Within this allegation is an admission that Bressi himself had access to these emails; he could not have offered the Government access to something he did not himself possess. Further, "email by its nature, has a sender and a recipient. If [Bressi] wished, he might seek copies of any important email from the counterparty."[27] Finally, as above, the Government is under no obligation to seize and preserve Bressi's emails.

*Fourth*, the Government notes that "[n]othing of evidentiary value was recovered [from the surveillance footage], as it appeared that the surveillance system

---

[25] Doc. 365, at 8-10.
[26] Doc. 356, ¶ 47.
[27] *U.S. v. Lattanzio*, No. CR 15-446 (KM), 2017 WL 3297510, at *7 n.11 (D.N.J. Aug. 1, 2017).

continued to record and overwrite from June 8, 2019 through August when it was recovered."[28] Contrary to Bressi's assertion, the surveillance system was not destroyed, but remains available to Bressi for inspection upon request, as it has been for the last five years.[29]

Further, Bressi overstates the extent to which the referenced evidence would be exculpatory. Throughout this case, Bressi has maintained that SHIVA was a legitimate business engaged in the development of "some world-changing technologies in fields as diverse as energy, medicine, beverages, communications, entertainment, aerospace, transportation, chemistry, robotics, artificial intelligence, and defense."[30] Even if all of that is true, it would have little bearing on the Government's allegations that, whatever else SHIVA was doing, it was also manufacturing and distributing controlled substances. Bressi misunderstands the Government's burden. It need not prove beyond a reasonable doubt that Bressi was not producing "Dazzle coating"—a coating to protect aircraft, drones, rockets, and other vehicles from laser directed energy weapons. Rather, the Government simply must prove beyond a reasonable doubt that Bressi was manufacturing and distributing controlled substances.

---

[28]   Doc. 365, at 10.
[29]   *Id.*
[30]   Doc. 271, at 5.

Bressi's Motion to Dismiss the Indictment for the failure to preserve evidence is denied.

## C.     Controlled Substances Act

In the half century since the enactment of the Controlled Substances Act courts have rejected countless challenges to its constitutionality. Bressi's challenges fare no better. The CSA does not violate the Ninth Amendment.[31] It does not violate the Commerce Clause,[32] and therefore is not an unconstitutional exercise of the police power.[33] The delegation to the DEA, through the Attorney General, of the scheduling of substances under the CSA is constitutionally permissible.[34]

Bressi suggests that the Controlled Substances Act burdens his First Amendment right to practice his religion as a Tantrist.[35] Bressi avers that Hindus—Tantra is a sect of Hinduism—have a long history of using marihuana, which is restricted by the CSA.[36] Assuming *arguendo* that the CSA's prohibition on the use,

---

[31]  *See Montana Caregivers Ass'n, LLC v. U.S.*, 526 F. App'x 756, 758-59 (9th Cir. 2013) (rejecting a Ninth Amendment challenge to the CSA on the basis that it "does not exceed a specific limitation" on Congressional power); *Raich v. Gonzales*, 500 F.3d 850, 866 (9th Cir. 2007) (holding that a right to use marijuana, in contravention of the CSA, is not cognizable under the Ninth Amendment).

[32]  *See Gonzales v. Raich*, 545 U.S. 1, 26 (2005) (rejecting challenge to CSA under the commerce clause "[b]ecause the CSA is a statute that directly regulates economic, commercial activity"); *accord Canna Provisions, Inc. v. Garland*, No. CV 23-30113-MGM, 2024 WL 3269534 (D. Mass. July 1, 2024).

[33]  *Montana Caregivers*, 546 F. App'x at 758. *See also U.S. v. Bishop*, 66 F.3d 569, 584-85 (3d Cir. 1995) (holding that, where criminal statute is valid exercise of commerce power, it does not unconstitutionally intrude on state police power).

[34]  *U.S. v. Gori*, 324 F.3d 234, 240 (3d Cir. 2003); *accord U.S. v. Alcorn*, 93 Fed. Appx. 37, 40 (6th Cir. 2004) (collecting cases).

[35]  Doc. 356 ¶ 73; Doc. 362 at 26.

[36]  Doc. 356 ¶¶ 71-72; Doc. 362 at 25-26.

cultivation, or trafficking of marihuana could be successfully challenged under the First Amendment on that basis, Bressi fails to connect that prohibition to the crimes alleged by the indictment: the possession, manufacture, and distribution of fentanyl, 3-methylfentanyl, and carfentanil.[37]

Bressi's Motion to Dismiss the Indictment on the basis that the Controlled Substances Act is unconstitutional is denied.

## III.   MOTIONS TO SUPPRESS

Bressi's omnibus motion includes five motions to suppress, seeking suppression of 1) financial records,[38] 2) evidence seized via grand jury subpoena,[39] 3) evidence seized pursuant to defective warrant applications,[40] 4) evidence seized via post-indictment misuse of the grand jury,[41] and 5) fruits of FBI Special Agent Timothy O'Malley's improper coercion of Bressi.[42] As noted above, the Court will reserve judgment on Bressi's Motion to Suppress Evidence Seized via Grand Jury

---

[37]   Doc. 1, at ¶¶ 1, 5. *See Kiczenski v. Gonzales*, 237 Fed. Appx. 149 (9th Cir. 2007) (holding that petitioner's "First Amendment challenge to the Controlled Substances Act failed because his belief in hemp's economic, social, and philosophical value is not rooted in religious belief") (citing *United States v. Ward,* 989 F.2d 1015, 1017 (9th Cir.1992)). Bressi's conclusory substitution of "psychoactive substances" in place of marihuana is insufficient to carry his burden. Doc. 356 ¶ 73; Doc. 362 at 26.

[38]   Doc. 356 ¶¶ 1-10.

[39]   *Id.* ¶¶ 11-17.

[40]   *Id.* ¶¶ 18-31.

[41]   *Id.* ¶¶ 32-35.

[42]   *Id.* ¶¶ 36-40.

Subpoena.[43] Bressi's remaining four suppression motions are denied for the reasons below.

### A. Financial Records

As Bressi notes, his "financial records were initially provided to the FBI by financial institutions through Bank Suspicious Activity Reports (BSARs) and Currency Transaction Reports (CTRs)."[44] Arguing that his financial records are protected by the Fourth Amendment, Bressi simply rehashes an argument that this Court already rejected when it denied Bressi's last suppression motion.[45] Bressi effectively asks the Court to reconsider its prior decision, but offers no new evidence or intervening change in the law that would warrant doing so.[46] Bressi's suggestion that suppression is warranted under the Fifth Amendment is similarly meritless.[47]

### B. Improper Grand Jury Subpoenas

Bressi argues that certain evidence should be excluded based on what he perceives to be misuse of the grand jury.[48] He notes that 56 subpoenas were issued after Bressi and his co-Defendants were indicted. Observing that no other

---

43  *Supra* n.9.
44  Doc. 356 ¶ 1.
45  Doc. 290, Section II.A.1.a.ii. *See also* Doc. 362, at 2 (noting that the Court had already addressed Bressi's Fourth Amendment arguments).
46  *See U.S. v. Jackson*, No. CR 18-216, 2020 WL 2557339, at *1 (W.D. Pa. May 19, 2020) (reconsideration granted only if moving party can demonstrate 1) intervening change in law; 2) availability of new, previously unavailable evidence; or 3) the need to correct a clear error of law or fact to prevent manifest injustice).
47  *U.S. v. Gippetti*, 153 Fed. Appx. 865, 869 (3d Cir. 2005).
48  Doc. 356, ¶¶ 32-35.

indictments were issued, he reasons that the dozens of post-indictment subpoenas "appear to have been issued for the principal purpose of preparing this case for trial."[49] However, as the Government notes, "it is perfectly reasonable for the grand jury to continue to investigate" Bressi and his co-Defendants, particularly where evidence gained from the Defendants themselves suggested that additional charges may have been appropriate.[50] Bressi's conclusory suggestion that it "appears" that the Government misused the grand jury is insufficient for him to meet his burden to show that "the Government's use of the grand jury was improperly motivated."[51]

## C.   Deficient Warrants

Bressi's omnibus motion also includes a request for a hearing pursuant to *Franks v. Delaware*,[52] and suppression of evidence seized from warrants issued on or after June 18, 2018.[53] But Bressi already requested a *Franks* hearing in his prior omnibus motion, filed in April 2022, which this court denied in February 2023.[54] Bressi's motion either rehashes arguments this Court already rejected, makes allegations unrelated to *Franks*, or makes allegations which are both unsupported by

---

[49]   *Id.* ¶ 33.
[50]   Doc. 365, at 6.
[51]   *U.S. v. US Infrastructure, Inc.*, 576 F.3d 1195, 1214 (11th Cir. 2009) (quoting *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994)).
[52]   438 U.S. 154 (1978).
[53]   Doc. 356 ¶¶ 18-31.
[54]   Doc. 191 at 13-16; Doc. 271 at 30-37.

evidence and not relevant to a reviewing magistrate. So Bressi's second request for a *Franks* hearing is denied.

In *Franks v. Delaware*, the Supreme Court of the United States set out the allegations necessary to mandate an evidentiary hearing to challenge a search warrant's veracity.[55] Because there is "a presumption of validity with respect to an affidavit supporting [a] search warrant,"[56] "*Franks* requires a demanding preliminary showing before a hearing is even granted."[57]

"To obtain a *Franks* hearing, a defendant must establish (1) that a warrant application contained false statements made with reckless disregard for the truth and (2) that the remaining truthful statements, standing alone, do not establish probable cause."[58] "[O]missions are made with reckless disregard for the truth when an officer reckless omits facts that any reasonable person would want to know," whereas "assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting."[59]

"There must be a 'substantial preliminary showing' that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause."[60] "In order to make

---

[55] *Franks*, 438 U.S. at 171-72.
[56] *Id.* at 155-56.
[57] *U.S. v. Alford*, No. 4:22-CR-00010, 2024 WL 2945415, at *2 (M.D. Pa. June 11, 2024)
[58] *United States v. Desu*, 23 F.4th 224, 234 (3d Cir. 2022).
[59] *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000) (en banc).
[60] *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (citing *Franks*, 438 U.S. at 171).

this preliminary showing, the defendant cannot rest on mere conclusory allegations or a 'mere desire to cross-examine,' but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses."[61]

First, on a fundamental level, Bressi's *Franks* request is insufficiently specific for this Court to reconstruct the warrants. Bressi does not point to a specific search warrant he claims was obtained through Agent O'Malley's intentional or reckless disregard for the truth. He only gestures vaguely to the "warrant applications," the "initial warrant applications," and "later warrants."[62] As Bressi's subsequent filing demonstrates, many search warrants were executed in this case.[63] Bressi himself seems to acknowledge that his allegations apply to different sections of different warrants. But this Court cannot apply the *Franks* test by babbling about falsehoods in the abstract. Instead, as the Supreme Court of the United States has instructed, Bressi has a burden to "point out specifically the portion of the warrant affidavit that is claimed to be false."[64] There is a good reason for this burden. For any falsehood that Bressi has satisfied his substantial preliminary showing on, this Court must

---

[61] *Id.* (citing *Franks*, 438 U.S. at 171).

[62] Doc. 356 ¶¶ 28-31.

[63] *See* Exh. A, Doc. 360 (attaching 18 warrant applications and affidavits totaling 913 pages of exhibits).

[64] *Franks*, 438 U.S. at 171.

conduct a "reconstructive surgery,"[65] correcting the affidavit in question and asking whether probable cause would be established. So more specificity is required to enable the analysis Bressi is requesting from this Court. If Bressi expects this Court to comb through these exhibits and litigate the *Franks* motion on his behalf, that expectation is misplaced.

Secondly, this Court would never reach the warrant-reconstruction phase for Bressi's request because none of his false statements or omissions have been supported through a substantial preliminary showing.

In his initial motion, Bressi argued that Agent O'Malley omitted information indicating that SHIVA may have operated for licit purposes, including Bressi's patent applications, SHIVA's purchases of non-drug-precursor chemicals, and SHIVA's expenditure of money on supplies and equipment unconnected with the production of trafficking in controlled substances or money laundering.[66] This Court rejected the argument that these omissions were made with intentional or reckless disregard for the truth because such facts showed no contradiction, and therefore were extraneous, rather than facts that "any reasonable person would have known that . . . the judge would wish to know."[67]   Bressi now states that O'Malley was

---

[65]  *See Wilson*, 212 F.3d at 789; *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 470 (3d Cir. 2016) ("[W]hen a court determines that information was asserted or omitted in an affidavit of probable cause with at least reckless disregard for the truth, it must perform a word-by-word reconstruction of the affidavit.").

[66]  Doc. 191 at 14.

[67]  Memorandum Opinion, Doc. 271 at 32-33.

aware that "there were many purchases unrelated to controlled substances" by SHIVA, but that he failed to inform the magistrate of this fact.[68] This is no different than the argument this Court already rejected; the information was extraneous, so O'Malley did not omit it with an intentional reckless disregard for the truth.

Bressi also references an email obtained through discovery in which Agent O'Malley communicates with another DEA Agent about SHIVA's purchases.[69] O'Malley asks for someone at the "Clan Lab" to look at a spreadsheet listing items and chemicals purchased through PayPal to see if Bressi may be "back into making meth or possibly making some analog narcotic."[70] From this, Bressi concludes that "O'Malley's intention was not to find if there were licit uses, but rather what illicit uses existed for the purchases."[71] But demonstrating that an officer is attempting to gather evidence does not show that he is acting untruthfully. It shows that he is doing his job.

Bressi also states that, as demonstrated by subsequent testimony, Joesph Bozenko "was not an individual who was aware of research lab practices but was able only to provide information as to whether there were illicit purposes of these purported purchases."[72] First, Bressi has failed to demonstrate that O'Malley was

---

[68]   Doc. 356 ¶¶ 24, 26-27.
[69]   *Id.* ¶¶ 19-21 (citing Doc. 297-1 at 12-13).
[70]   Doc. 297-1 at 13.
[71]   Doc. 356 ¶ 21.
[72]   Doc. 356 ¶¶ 22, 26.

aware of any limited expertise on Bozenko's part which would have clouded his view of whether "SHIVA was doing legitimate research and development of products."[73] Any subsequent testimony would have no bearing upon O'Malley's truthfulness when he authored his affidavit.[74] Secondly, Bressi has failed to cite to the testimony proving the allegation that Bozenko's expertise was somehow limited, and if so, what impact these limitations had on the affidavit.[75] Thirdly, it is not apparent that a judge would want to know this allegedly omitted information, because it does not impact Bozenko's opinion that Bressi's purchases were for illicit purposes. And if there is anywhere in the 900 plus pages of warrant affidavits and applications that O'Malley has cited Bozenko for such expertise, Bressi has failed to fulfill his burden to "point out specifically the portion of the warrant affidavit that is claimed to be false."[76] So this objection fails three times over to support a "substantial preliminary showing" of an intentional or reckless omission.

Bressi's original omnibus motion also referenced information that he alleges undermines the confidential witnesses' credibility: both CW-1 and CW-2 were

---

[73] *Id.* ¶ 28.

[74] *See Thompson v. City of Williamsport*, No. 4:22-CV-01159, 2024 WL 1747645, at *8 (M.D. Pa. Apr. 23, 2024) ("Just because Bolt could have discovered this exonerating information more speedily does not mean that he intentionally or recklessly omitted it. A court does not evaluate probable cause in hindsight.") (cleaned up); *Morrison v. Schultz*, 270 F.App'x 111, 118 (3d Cir. 2008) (explaining that omitted information must be within officer's knowledge for omission to be reckless or deliberate).

[75] *See Franks*, 438 U.S. at 171 ("Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.").

[76] *Franks*, 438 U.S. at 171.

allegedly "jilted girlfriends of Mr. Bressi, both of whom owed Mr. Bressi considerable sums of money which neither intended to repay."[77] This Court rejected that argument because the confidential witness statements were corroborated by subsequent investigative evidence, and so even if a judge would wish to know this information, it would not alter the probable cause finding. Bressi repeats these allegations in his supplemental motion.[78] This argument, too, is rejected for the same reason now as it was rejected in February 2023.

Bressi also claims that Agent O'Malley withheld various information from Bozenko.[79] But Bozenko is not a magistrate judge; he was not asked to evaluate probable cause, but rather to answer a specific question about whether some of Bressi and SHIVA's purchases were consistent with manufacturing controlled substances. For the same reason, this information would be extraneous to a magistrate reviewing any of O'Malley's warrant applications. So this has no relevance to Bressi's *Franks* motion.

---

[77]   Doc. 191 at 15.

[78]   Doc. 356 ¶ 31. *See also United States v. Brown*, 3 F.3d 673 (3d Cir. 1993) ("It is well-established that a substantial showing of the *informant's* untruthfulness is not sufficient to warrant a *Franks* hearing."); *U.S. v. King*, No. 4:20-CV-00158, 2022 WL 141553, at *11 (M.D. Pa. Jan. 14, 2022) (explaining that omission about an informer's motivation for providing information did not constitute a reckless disregard for the truth because, given that the affidavit detailed independent police corroboration of the information provided, this was "not the type of omission with which *Franks* or *Wilson* were concerned"); *U.S. v. Darby*, No. 1:14-CR-00123, 2015 WL 13344905, at *6 (M.D. Pa. Aug. 19, 2015), *aff'd*, 684 Fed. Appx. 219 (3d Cir. 2017).

[79]   *Id.* ¶¶ 20, 25.

Bressi also claims that the warrant applications' reference to statements by "unidentified bank personnel" evidence material omissions because the affidavit omits "any information to establish the credibility or reliability of these witnesses."[80] This is the kind of conclusory allegation of reckless omissions explicitly disavowed by the *Franks* court and falls far short of the substantial preliminary showing standard.[81]   Bressi also states that "the warrant applications include evidence of violations" of 12 U.S.C. § 3420.[82] While this may be relevant to Bressi's Motion to Suppress Evidence Seized via Grand Jury Subpoena, it has no relevance to the *Franks* motion; it is not a factual omission or false assertion, and has no bearing upon probable cause.

Finally, Bressi claims that O'Malley "did not consult with experts within the areas of defense, health, aerospace engineering, or any of the fields concerning the uses of these chemicals or the legitimacy of SHIVA's work."[83] If this is meant to allege an omission, it fails to do so. O'Malley's failure to state the experts he did *not* consult with is the kind of "omission" that goes without saying is far from showing a reckless disregard for the truth.

---

[80]   Doc. 356 ¶ 29.
[81]   *See Franks*, 438 U.S. at 171 ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory . . . those allegations must be accompanied by an offer of proof.").
[82]   Doc. 356 ¶ 28.
[83]   *Id.* ¶ 23.

Bressi's vague motion would require this Court to comb through hundreds of pages to construct a *Franks* argument on his behalf. And in any event, he fails to meet the substantial preliminary showing required to obtain a *Franks* hearing. Bressi presents very few new arguments when his current motion is compared to his prior one, none of which are supported by any citations to evidence. So, no *Franks* hearing is warranted, and Bressi's motion is denied.

### D.    Coercion

Bressi seeks to suppress statements he made to Agent O'Malley and Task Force Officer Ryan Kelly on the basis that the statements were the product of improper coercion.[84] This is Bressi's second such Motion; the Court denied the first after a holding a hearing at which both O'Malley and Kelly testified.[85] Bressi has not provided new evidence or pointed to any intervening change in the law which would give the Court cause to revisit the issue.[86]

## IV.   MOTION IN *LIMINE*

### A.    Patrick Testimony

Previously, the Court denied Bressi's *Daubert* Motion except "as to any expert opinions which are based on materials which were untimely disclosed except those opinions which were based upon the United Nations publication *Clandestine*

---

[84]   Doc. 356, ¶¶ 36-40.
[85]   Doc. 150; Docs. 271-72.
[86]   *Supra* n.46.

19

*Manufacture of Substances Under International Control.*"[87] In so holding, the Court observed that Bressi had not been afforded a fair and full opportunity to review certain source material that Government expert Rebecca Patrick relied upon where that source material was disclosed to Bressi for the first time during the *Daubert* hearing.[88] Following the Court's Order, Bressi now seeks to preclude Patrick from testifying regarding "the synthesis routes of fentanyl, acetyl fentanyl, and carfentanil as outlined in her slide shows and report."[89] Bressi asserts, for the first time, that "until the morning of the *Daubert* hearing, the Government had not provided any of the slide shows, nor the references contained therein" presented during the hearing.[90]

However, as evidenced by the Government's opposition and accompanying exhibits, the relevant documents had been provided.[91] Further, the Government's Rule 16 disclosure states that Patrick would testify as to "the opinions in her entire report *and PowerPoint presentations*."[92] Not only had the materials been provided, they were explicitly identified. Accordingly, Bressi's Motion in *Limine* is denied.

### B.   Potential Defendant Testimony

A common thread running through Bressi's motions—the motions currently pending and those he has filed in the past—is his insistence that SHIVA was a

---

[87]   July 3 Ord. ¶ 3.
[88]   July 3 Mem. Op. 28-29.
[89]   Doc. 356 ¶ 78.
[90]   *Id.* ¶ 77.
[91]   Doc. 366, at 2.
[92]   Doc. 306 at 5.

legitimate business. As the Court has explained, the Government is under no obligation to either disprove or help Bressi prove his theory of the case. As to the former, it can be true that Bressi was both manufacturing illicit substances and operating a legitimate business. As to the latter, that burden falls entirely on Bressi. While he can certainly use the evidence the Government does present at trial to prove his case, the Government is under no obligation to introduce evidence for his benefit.

Of course, Bressi need not prove anything. He need not testify or present any evidence at all. However, the nature of Bressi's filings and arguments to date suggest that he may seek to demonstrate his innocence at trial by proving that SHIVA was a legitimate business. To that end, the Court notes that, while Bressi has opposed the Government's forensic chemist expert witnesses, he has not disclosed any expert witnesses of his own. The Court therefore briefly addresses two issues that it foresees as potential areas of concern as trial approaches.

First, Bressi has previously suggested that the Government's untimely disclosures have precluded him from engaging his own experts.[93] Insofar as Bressi intends to make a similar argument regarding the evidence which is the subject of his Motion to Compel, discussed below, it is without merit. Bressi cannot circumvent the deadlines for expert disclosures by failing to request the evidence that he seeks to have an expert review. Where Bressi has failed to request that certain evidence is

---

[93] *See, e.g.*, Doc. 348, at 4 (suggesting that Government's untimely expert disclosures prevented him from reviewing evidence with his own expert).

made available for inspection until the eleventh hour, he has waived the opportunity to have that evidence analyzed by an expert.

Second, and related to the above, Bressi himself cannot offer such expert testimony. The right to testify in one's defense "is not without limit."[94] Bressi "does not have an unfettered right to offer testimony that is . . . inadmissible under standard rules of evidence."[95] Bressi has not disclosed himself as an expert, identified any such expert testimony he may provide, nor is there any evidence in the record that he is quailed to offer such testimony.

The Court emphasizes that the Court's Opinion and ruling does not preclude Bressi from testifying or introducing evidence in his defense.[96] Bressi may still attempt to prove that SHIVA was a legitimate business through the Government's evidence or by offering his own non-expert evidence, including his own non-expert testimony.[97] The Court does not mean to dissuade Bressi from testifying or otherwise offering such evidence. Rather, it is the Court's intention is to provide clarity as the parties, in particular Bressi, prepare for trial.

---

[94] *Jones v. Davis*, 8 F.4th 1027, 1036 (9th Cir. 2021).

[95] *Id.* (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)).

[96] *See U.S. v. Scott*, No. 4:20-CR-00065, 2024 WL 436340, at *1-2 (M.D. Pa. Feb. 5, 2024) (emphasizing that ruling precluding improper defendant testimony does not preclude defendant from testifying altogether).

[97] The Court notes that certain testimony which would ordinarily be considered expert testimony may be otherwise admissible.

## V.    MOTION TO COMPEL

Finally, Bressi's omnibus Motion includes a Motion to Compel discovery of a laundry list of evidence.[98] In his brief in support, Bressi advises the Court that "[d]efense will endeavor to resolve the[] discovery issues" with the Government and "is seeking court assistance in the event that any of the requested evidence is not made available by the Government."[99] For its part, the Government avers that Bressi's Motion is "the first time he has sought additional discovery from the Government" in the five years this case has been pending.[100] The Government then goes through the list of discovery requested by Bressi, clarifying that the evidence he seeks has been provided previously,[101] was provided concurrent with the service of the Government's opposition,[102] is available for inspection at Bressi's request,[103] or does not exist.[104]

---

[98]   Doc. 356, Section IV.

[99]   Doc. 362, at 29.

[100]   Doc. 365, at 10-11.

[101]   *Id.* Section G, ¶¶ 2, 4, 6, 12.

[102]   *Id.* ¶¶ 1, 2, 6, 8, 9, 10, 12, 13.

[103]   *Id.* ¶¶ 1, 2, 3. The Government notes that a Court Order is required by the U.S. Marshal Service to make the Mont Blanc bag available for inspection. *Id.* ¶ 3. The Government then states that it "hereby moves for such an order" "[i]f the Court believes that production of the Mont Blanc messenger bag is necessary." *Id.* From the Court's perspective, an intermediate step of an Order requiring the U.S.M.S. to confirm that the bag was, in fact, not seized with any contents, seems proper. Bressi may then, within one week of receipt of the Marshal's response, file, a formal Motion to Compel production of the bag by the Marshal Service. Bressi is advised that any such Motion shall explain why production of the bag is necessary. *Cf. id.* (arguing that the bag or its purported contents would have no probative value). Any Motion to Compel production of an empty bag will be viewed with appropriate skepticism.

[104]   *Id.* ¶¶ 5, 7, 11.

In the absence of any live dispute between the parties, Bressi's Motion to Compel is denied as moot.[105]

## VI.    CONCLUSION

For the foregoing reasons, Bressi's motion is denied in its entirety.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[105] Bressi suggests that he has filed his Motion to "seek[] court assistance in the event any of the requested evidence is not made available by the government." Doc. 362, at 29. Insofar as the Government has not actually failed to make any of the sought evidence available, denial of Bressi's Motion is also warranted on the basis that it is not ripe.