IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:19-CR-00207 |
| v. | (Chief Judge Brann) |
| ANTHONY D. BRESSI, | |
| Defendant. | |

MEMORANDUM OPINION

OCTOBER 25, 2024

I.     BACKGROUND

In preparation for Defendant Anthony Bressi's upcoming trial, he and the Government submitted proposed jury instructions. In his proposal, Bressi requested a special verdict form asking the jury to determine whether he had cooperated with the Government during its investigation pursuant to an agreement not to prosecute him (the "immunity agreement").[1] The Government responded with a Motion in Limine seeking to prevent Bressi from putting the immunity question to the jury, and arguing that the issue had already been decided pursuant to a prior motion.[2]

The Court agrees with the Government that it has already rejected Bressi's arguments regarding an alleged immunity agreement as factually unsupported.[3] Nevertheless, out of an abundance of caution, the Court set a hearing to consider:

---

[1] Doc. 374 at 4-5.
[2] Doc. 389; *see* Docs. 356, 362.
[3] Doc. 368 at 3-4.

(1) whether the question of immunity is for the jury or the Court; and (2) the evidence regarding the existence of an immunity agreement.[4] Having considered the parties' arguments and evidence, the Court now reaffirms its conclusion that Bressi has not carried his burden to prove the existence of an immunity agreement and grants the Government's Motion in Limine.

## II.   DISCUSSION

The law is abundantly clear, both in this Circuit and every other, that "[w]hether the government has violated a plea, or by analogy, a cooperation agreement, is a question of law . . . [and] [w]hether any such agreement exists is also a question of law with the underlying facts found by the District Court . . . ."[5] "[I]mmunity agreements are appropriate fodder for the court because . . . such agreements 'are in the nature of contracts, their scope and effects are strongly influenced by contract law principles,' and the defendant's rights under these agreements 'are determined by the terms and conditions of the bargain *as found by*

---

[4]   Doc. 394.
[5]   *United States v. Baird*, 218 F.3d 221, 229 (3d Cir. 2000) (citing *United States v. Huang*, 178 F.3d 184, 187 (3d Cir. 1999) and *ATACS Corp. v. Trans World Comms., Inc.*, 155 F.3d 659, 665 (3d Cir. 1998)); *United States v. Bulger*, 816 F.3d 137, 146-47 (1st Cir. 2016); *United States v. Gerant*, 995 F.2d 505, 509-10 (4th Cir. 1993); *United States v. Brimberry*, 744 F.2d 580, 586 (7th Cir. 1984); *United States v. Dudden*, 65 F.3d 1461, 1469 (9th Cir. 1995); *see United States v. Aleman*, 286 F.3d 86, 89-92 (2d Cir. 2002) (remanding to district court to hold evidentiary hearing on immunity issue); *United States v. Darwich*, 574 F. App'x 582, 592-94 (6th Cir. 2014) (affirming district court finding of no immunity after evidentiary hearing); *United States v. Sykes*, 144 F.3d 564, 566 (8th Cir. 1998) (same); *United States v. Fishman*, 645 F.3d 1175, 1184-85 (10th Cir. 2011) (same); *United States v. Robertson*, 736 F.3d 1317, 1321, 1324-25 (11th Cir. 2013) (same); *cf. United States v. Ramirez*, 21 F.3d 1109, at *4 (5th Cir. 1994) (per curiam) (unpublished table opinion) (affirming district court finding of no immunity based on evidence presented at trial).

*the court.*'"⁶ Moreover, because immunity from prosecution "involves the right of the government to prosecute [the defendant] rather than [the defendant's] guilt or innocence, . . . th[e] issue [may] be resolved by the district court."⁷ Bressi's sole case to the contrary deals with the distinct situation of an immunity agreement offered as evidence of innocence, rather than immunity from guilt.⁸ Therefore, the Court will consider the evidence for and against the existence of an immunity agreement.

The Court determines the existence and terms of an immunity agreement by reference to contract principles.⁹ Accordingly, for an agreement to exist, the defendant and the Government must mutually assent to its essential terms.¹⁰ The Government may only be bound by promises made by those to whom it has

---

6   *Bulger*, 816 F.3d at 148 (citing *United States v. McLaughlin*, 957 F.2d 12, 16 (1st Cir. 1992)) (emphasis in original).

7   *Gerant*, 995 F.2d at 509-10 (citing *United States v. MacDougall*, 790 F.2d 1135, 1142 (4th Cir. 1986)).

8   *United States v. Thompson*, 25 F.3d 1558, 1563-65 (11th Cir. 1994) (holding that evidence of an alleged immunity agreement should be admitted *in support of a defense of entrapment by estoppel*); *see id.* at 1565 ("[T]he question of the *extent* of a grant of immunity . . . is generally a question of fact for the jury" (emphasis added) (citing *United States v. Cross*, 928 F.2d 1030, 1045 (11th Cir. 1991)); *Cross*, 928 F.2d at 1045 ("Because Cross's immunity contentions raised an issue *relevant to his guilt or innocence*, the jury was allowed to hear the evidence and received instructions on this defense." (emphasis added)); *id.* at 1045 n.46 (distinguishing an immunity argument challenging "the truth of the indictment's allegations . . . [which] present[s] a factual question for the jury," from a "non-guilt-related immunity claim"). In *Thompson*, the United States Court of Appeals for the Eleventh Circuit *affirmed* the district court's summary denial of the defendant's motion to dismiss the indictment based on the alleged immunity agreement because the defendant had not provided any evidence of the terms of the agreement beyond "conclusory statements that such an agreement existed." *Id.* at 1562-63.

9   *Baird*, 218 F.3d at 229; *see United States v. Nolan-Cooper*, 155 F.3d 221, 236 (3d Cir. 1998).

10  *ATACS Corp.*, 155 F.3d at 665-66; *United States v. Short*, 387 F. App'x 308, 313 (4th Cir. 2010); *United States v. Jimenez*, 256 F.3d 330, 347 (5th Cir. 2001).

conferred such authority.[11] As the proponent of the existence and breach of an immunity agreement, Bressi bears the burden of proving both by a preponderance of the evidence.[12] Bressi briefly argues that the Government should have the burden of proving that an immunity agreement did not exist, but "[w]here [a defense] 'excuse[s] conduct that would otherwise be punishable,' but 'does not controvert any of the elements of the offense itself,'" like immunity, "the Government has no constitutional duty to overcome the defense beyond a reasonable doubt."[13] Bressi asserts that he is immune from prosecution: he must prove it.

### A. Testimony

#### 1. Bressi

Bressi provides the following evidence of the existence of an immunity agreement. When law enforcement executed a search warrant at his business ("SHIVA") on June 8, 2019, Bressi spoke with two officers: FBI Special Agent Timothy O'Malley and Pennsylvania State Trooper Ryan Kelley.[14] According to

---

[11] *United States v. Flemmi*, 225 F.3d 78, 84-85 (1st Cir. 2000); *United States v. Roberts*, 280 F. Supp. 2d 325, 338 (D. Del. 2003) (*citing United States v. Fuzer*, 18 F.3d 517, 521 (7th Cir. 1994)).

[12] *Huang*, 178 F.3d at 187 (proving breach); *United States v. Holtz*, No. 92-CR-0459, 1993 WL 482952, at *4 (E.D. Pa. Nov. 15, 1993) (proving existence). That the government is the technical movant does not change the burden. The government was forced to act in response to Bressi's unorthodox attempt to submit the immunity question to the jury, so although this is the government's motion, Bressi raised the issue.

[13] *Smith v. United States*, 568 U.S. 106, 110 (2013) (quoting *Dixon v. United States*, 548 U.S. 1, 6 (2006)).

[14] Doc. 356 ¶ 42; Hrg. Many of the relevant facts are based on testimony given at the hearing held on October 24, 2024. As a transcript of that proceeding is not yet available, the Court

Bressi, when he realized that the Government suspected him of criminal activity, he ceased discussion and demanded complete immunity from prosecution.[15] His demand was informed by his prior conviction and lengthy criminal sentence for a federal narcotics offense, which he maintains was wrongful and resulted from the actual offenders making complete immunity deals in return for falsely testifying against him.[16] He also requested that his employees be granted immunity from prosecution, and that his girlfriend, a Chinese national, be permitted to repatriate.[17]

Bressi testified that Agent O'Malley and Trooper Kelley agreed to grant all of his requests in return for his cooperation in their drug trafficking investigation.[18] After the alleged agreement, Bressi admitted to manufacturing narcotics, and observed Agent O'Malley make a phone call, which he believed was to Assistant United States Attorney Geoffrey MacArthur for the purpose of confirming the immunity deal.[19] Agent O'Malley returned and continued talking with Bressi, but never confirmed that AUSA MacArthur had given the deal his approval.[20] Nevertheless, Bressi took Agent O'Malley's continued participation in the discussion to mean that the deal was set.[21] Sometime after the parties reached the

---

    notes these facts from its recollection. When a transcript is available, the Court will prepare and publish a revised Memorandum Opinion with appropriate citations.

[15]  Hrg.
[16]  *Id.*
[17]  Doc. 356 ¶ 42; Hrg.
[18]  Hrg.
[19]  *Id.*
[20]  *Id.*
[21]  *Id.*

purported agreement, Bressi offered to make controlled deliveries of a counterfeit controlled substance to his alleged co-conspirators.[22] At the end of the day, Bressi was placed under arrest and taken to prison.[23]

In the ensuing weeks, Bressi engaged in the controlled deliveries and cooperated with the Government.[24] He also participated in several proffer sessions with Agent O'Malley, his former defense counsel, Assistant Federal Defender Gerald Lord, and, at times, AUSA MacArthur.[25] Bressi was indicted after the controlled buys, but says that he believed the indictment was a "ruse" to keep up his credibility on the street.[26] After several rounds of proffer sessions, Bressi stated that the Government offered him a plea deal in return for his cooperation.[27] He rejected it, believing that he was entitled to complete immunity from prosecution.[28]

Bressi props up his assertions of fact by arguing that his prior experience as a criminal, including his previous arrests and time served along with the apparent immunity agreements reached by his co-conspirators in his prior case, prove that "[he] would not have voluntarily admitted to manufacturing hundreds of kilos [of

---

[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*

scheduled narcotics]. The only logical explanation for this admission was that he believed that an immunity deal existed."[29]

### 2. Government

The Government's witnesses, Agent O'Malley and Trooper Kelley, told a different story. According to their matching testimony, when confronted with the Government's evidence of his conduct, Bressi admitted his criminality and requested an opportunity to cooperate.[30] Agent O'Malley and Trooper Kelley were both receptive to a cooperation deal, but were clear that neither had the authority to make Bressi any promises about what he would receive in return for his cooperation.[31] That testimony aligns with statements they made at a suppression hearing nearly two years ago, where Agent O'Malley stated that "I think what I told [Bressi] is that we, as agents, are not in any position to promise anything. I think what I did tell [Bressi] was that the only thing I could do, from an agent's perspective, is advocate for any cooperation that you provided."[32] In prior testimony, Trooper Kelley acknowledged that he told Bressi that the state was not planning to prosecute, but denied making any promises regarding federal nonprosecution,[33] and in the instant hearing explained that he was merely

---

[29] Doc. 362 at 15.
[30] Hrg.
[31] *Id.*
[32] Doc. 259 at 51:21-52:2.
[33] *See* Doc. 258 at 145:11-13, 147:8-10 (testimony of Trooper Kelley stating that he made no promises regarding nonprosecution, distinct from his statements regarding state prosecution).

clarifying to Bressi that the investigation was a federal one.[34] Agent O'Malley agreed that he spoke on the phone with AUSA MacArthur after Bressi requested to cooperate, but explained that he was informing AUSA MacArthur that Bressi had admitted to his conduct and that they would be going ahead with an arrest.[35] Agent O'Malley and Trooper Kelly maintain that neither made any promises to Bressi and that, instead, they affirmatively told him they could not promise him anything.[36] Their stories otherwise align with Bressi's.

### B. Analysis

Based on the evidence, the Court concludes that Bressi has not carried his burden of proving the existence of an immunity agreement on the facts or the law.

#### 1. Bressi's story is not credible.

Starting with the facts, in this case with contradictory testimony and no objective evidence, the Court, having observed the witnesses, finds the Government's more credible. Agent O'Malley and Trooper Kelley—the two people who spoke extensively with Bressi at SHIVA—both testified that neither promised Bressi that he would not be prosecuted.[37] Both stated clearly that, although they told Bressi they would do their best to advocate on his behalf if he

---

[34] Hrg.
[35] *Id.*
[36] *Id.*
[37] *Id.*

agreed to cooperate, they had no legal authority to extend an immunity offer.[38] And their stories of the SHIVA search aligned in all respects.[39]

Bressi told a similar story to the Government's witnesses, but claims he was offered complete immunity (in his words, that he "walks") in return for his promise to cooperate.[40] The Court is not inclined to accept Bressi's *ipse dixit* given that he has offered fabulous testimony both in the past and in this very hearing, where he stood by the position that, had he been granted pretrial release, he would have been able to prepare a $2.00-per-dose COVID-19 vaccine, "CoviNanoVax™," within mere months of leaving incarceration.[41] Bressi's credibility is further undercut by the fact that he did not attempt to dismiss the indictment based on immunity from prosecution for *more than five years* while he was in federal custody awaiting trial on these charges.[42] And when he did assert his immunity argument, it was a minor aspect of his all-out-blitz litigation strategy raising a litany of issues on the eve of

---

[38] Hrg. Tr.
[39] Notably, Agent O'Malley admitted to a making a comment that Bressi has characterized as threatening. He agreed that he mentioned to Bressi that his girlfriend might be a Chinese spy, but explained that he had been joking (when questioned about the spy comment, Bressi initially laughed before stating that he took the comment extremely seriously). Hrg. That Agent O'Malley acknowledged this potentially damaging fact supports the Court's conclusion that his testimony was truthful.
[40] Hrg. Tr.
[41] *See* Doc. 100-1 at 2-5; Hrg. Tr.
[42] *Compare* Doc. 356 ¶ 41 (alleging he was promised immunity on June 8, 2019) *and* Doc. 11 (order of detention dated June 10, 2019) *with* Doc. 356 (raising immunity for the first time on July 19, 2024).

trial.[43] The Court has since determined that all of those issues, including his immunity arguments as presented at that time, were meritless.[44]

Beyond his historical incredibility, Bressi's story of an immunity agreement suffers from internal inconsistencies and relies on Bressi's own unsupported inferences. First, the Court finds it difficult to believe that experienced law enforcement officers such as Agent O'Malley and Trooper Kelley, when armed with a warrant to search Bressi's business and a trove of evidence of other suspicious activity, would offer Bressi complete immunity from prosecution before learning what value, if any, his cooperation might hold (recall that, on Bressi's testimony, he did not admit to any criminal activity or implicate any co-conspirators until after he was immune).[45]

Second, because the Government had no way of knowing what kind of cooperation Bressi could offer, Bressi's duties under the purported immunity agreement were astonishingly vague: he was required only to "cooperate."[46] He contends that the controlled deliveries were rolled into the agreement, but that the specifics postdated the alleged moment of mutual assent suggests that any

---

[43] *Compare* Doc. 352 (setting in pre-trial status conference for July 19, 2024) *with* Doc. 356 (filed July 19, 2024).
[44] Docs. 368, 387.
[45] Hrg. Additionally, the Court notes that it has never encountered a purely oral immunity agreement between a criminal defendant and the federal government.
[46] Doc. 356 ¶¶ 41-42; Hrg.

agreement was not as firm as Bressi argues.[47] Third, Bressi plainly admits that he never received confirmation from Agent O'Malley that AUSA MacArthur had approved the immunity agreement on the call.[48] His baseless inference that approval occurred proves nothing.

Last, after the supposed agreement, the Government proceeded as though it would be prosecuting Bressi when it arrested and then indicted him. The continued proffer sessions also suggest that the Government sought additional information before deciding what it would offer Bressi in return for his cooperation. Bressi assumed that this was all a "ruse," but the Government clearly did not agree, given that it eventually came to him with a plea deal.[49] All of these facts from Bressi's own testimony undermine his position that a firm immunity agreement was reached at the SHIVA search.

Finally, the Court finds that Bressi's common-sense arguments that he would not have incriminated himself without an immunity agreement are not worthy of consideration. As explained when previously rejecting these arguments, "Bressi's conclusory statement that he is not a fool or that he did not engage in

---

[47] The Court further notes that, to be valid, a contract's terms must be "reasonably certain," meaning that "they provide a basis for determining the existence of a breach . . . ." *Ecore Int'l, Inc. v. Downey*, 343 F. Supp. 3d 459, 489 (E.D. Pa. 2018) (quoting Restatement (Second) of Contracts § 33 (1981)). Although the Court does not reach the issue, it could be argued that Bressi's purported agreement is too vague to create a valid contract.
[48] Hrg.
[49] Hrg.

foolish behavior is insufficient" to raise a question regarding immunity.[50] Although it may sometimes be unwise for a criminal defendant to cooperate without an immunity offer, there may be other times when a defendant faced with a seemingly insurmountable mountain of evidence finds himself in circumstances so desperate that cooperation is his only hope for clemency, even before an agreement is reached. The Government, having the upper hand, may take or leave that cooperation and reward it as it sees fit. Here, the latter situation is at least as likely as the former.[51] Furthermore, Bressi's actions merely illustrate his *subjective belief* that admitting to his conduct and cooperating with the Government would result in immunity. That is not enough.[52]

When the fat is trimmed away, that is all that remains on this bone: Bressi's subjective, unilateral, and baseless belief that he would receive immunity if he cooperated. The Government agrees that he did cooperate, and Bressi himself explained that he received an offer of leniency in return.[53] But Bressi wanted (and maybe genuinely expected) more. Desire and expectation, however, do not equal entitlement. There is no legitimate evidence in the record to suggest that the

---

[50] Doc. 368 at 4.
[51] *See* Doc. 100-1 at 9 (noting in arguing for pretrial release that Bressi's cooperation "stands to benefit [him] substantially *at a future sentencing hearing*" and that "[i]f [he] does not fully continue his cooperation with the Government, he is *virtually guaranteeing the imposition of a sentence*, upon conviction, *that is so lengthy he will likely die in prison*" (emphasis added)).
[52] *See Jimenez*, 256 F.3d at 348 n.25 ("We find no merit in Jimenez's argument that, by agreeing to undergo a polygraph examination, he must have believed that he would not be prosecuted. His subjective belief cannot, by itself, establish transactional immunity.").
[53] Hrg.

Government actually promised or reasonably implied that Bressi would be given full immunity in return for his cooperation. Bressi, therefore, is not immune.

### 2. Bressi's purported agreement is legally deficient.

Turning to the law, even assuming that Bressi's story was entirely credible, he still has not demonstrated that a viable immunity agreement existed. Bressi has not identified a single Government official with authority to grant him immunity that did so. The Government can only be bound to an immunity agreement made by one with "actual authority" to bind it.[54] The law is clear that FBI agents or other non-prosecutorial law enforcement officers lack authority to bind the Government to immunity agreements.[55] The same goes for state officers.[56] According to Bressi, he was promised immunity by Agent O'Malley and Trooper Kelley when they searched SHIVA.[57] He does not provide any evidence that either of these officers was empowered with actual authority to offer him immunity from prosecution. As discussed, the parties agree that Agent O'Malley called AUSA MacArthur during his conversation with Bressi, but Agent O'Malley denies that AUSA MacArthur

---

[54] *Flemmi*, 225 F.3d at 84-85; *United States v. Johnson*, 43 F.4th 771, 781-82 (7th Cir. 2022).

[55] *Flemmi*, 225 F.3d at 84, 87 (holding that FBI agents lack actual or implied authority to bind prosecutors to immunity agreements and collecting cases to that effect); *Johnson*, 43 F.4th at 781-82 ("[A]s this court has long recognized, only federal prosecutors can grant a defendant informal immunity from federal prosecution." (citing *Fuzer*, 18 F.3d at 520-21)); *United States v. Lilly*, 810 F.3d 1205, 1212-13, 1215 (10th Cir. 2015); *United States v. Gibson*, 4 F. Supp. 3d 1089, 1093-94 (S.D. Iowa 2014) (collecting cases holding that federal agents do not have authority to bind prosecutors).

[56] *Roberts*, 280 F. Supp. 2d at 336 (citing *United States v. Eliason*, 3 F.3d 1149, 1152 (7th Cir. 1993)); *Johnson*, 43 F.4th at 780; *Lilly*, 810 F.3d at 1212.

[57] *See* Doc. 402 at 2-6; Hrg.

approved any immunity agreement, and Bressi agrees that Agent O'Malley told him nothing about the call.[58] Bressi's subjective belief that AUSA MacArthur approved immunity on the call is proof of nothing, and without a prosecutorial promise of (or assent to) immunity, there is no enforceable agreement.

### 3. There is no other basis for an immunity agreement.

None of Bressi's other dealings with law enforcement establishes federal immunity. Trooper Kelley's clarification that Bressi was not facing state charges at the time of the search is ineffective because a state agreement not to prosecute does not establish federal immunity from prosecution. Just as a state official may not bind the federal government in an immunity agreement, neither can a state immunity agreement be enforced against the federal government, "unless the federal government has knowledge of and consents to the agreement."[59] Bressi presents absolutely no evidence to show that any federal official was aware of any state promise not to prosecute, let alone that there was federal concurrence in such an agreement.[60]

Bressi's proffer sessions also do not establish immunity from prosecution. Generally, a proffer only confers use immunity to a defendant with regard to the statements he makes during the proffer, meaning that those statements will not be

---

[58] Hrg.
[59] *Roberts*, 280 F. Supp. 2d at 336 (citing *Eliason*, 3 F.3d at 1152); *see United States v. Lilly*, 810 F.3d at 1209-15.
[60] *See* Doc. 258 at 145:11-13, 147:8-10.

used directly against him in a subsequent prosecution.[61] A proffer is usually the beginning of the process of negotiating for some kind of immunity or plea agreement, as it allows the defendant to safely disclose what he knows to Government in order to demonstrate his potential value as a cooperator.[62] Merely engaging in this preliminary step does not grant the defendant all of the rewards of successful negotiation, mutual agreement, and fulsome cooperation.

Finally, there is no basis for finding that "equitable immunity," to the extent it is a viable theory,[63] should be applied here because Bressi has not proven the existence of *any* agreement,[64] much less that the Government breached an agreement "with the deliberate intention of distorting the judicial fact finding process," as would be required for equitable relief.[65]

---

[61] *See United States v. Carter*, 176 F. App'x 246, 249-50 (3d Cir. 2006) (approving derivative use of statements made during proffer session).

[62] *See United States v. Stein*, No. 04-CR-0269, 2005 WL 1377851, at *10 (E.D. Pa. June 8, 2005) (discussing role of proffer session in context of rules prohibiting admissions of statements made in the course of plea discussions and noting that "in many cases, a proffer session may be a necessary pre-requisite to any discussion of a plea"); *United States v. Giamo*, 153 F. Supp. 3d 744, 748-49 & n.2 (E.D. Pa. 2015) (describing proffer procedure in the context of plea negotiations and noting that "[t]he term 'proffer session' is generally applied to those interviews in which a defendant submits to questioning by prosecutors *in the hope* of receiving a benefit from the Government, such as a decision to offer a defendant a cooperation agreement . . ." (emphasis added) (quoting *United States v. Chaparro*, 181 F. Supp. 2d 323, 326 n.2 (S.D.N.Y. 2002)).

[63] *See Stein*, 2005 WL 1377851, at *16 (noting that "[n]o decision of the United States Court of Appeals for the Third Circuit has yet adopted the doctrine"). The Court addresses this theory because Bressi appeared to raise it in setting forth his proposed jury instructions. *See* Doc. 374 at 4 (citing *Roberts*, 280 F. Supp. 2d at 338 (listing elements of equitable immunity (quoting *Rowe v. Griffin*, 676 F.2d 524, 527-28 (11th Cir. 1982)))).

[64] *Stein*, 2005 WL 1377851, at *16.

[65] *Roberts*, 280 F. Supp. 2d at 338 (quoting *United States v. Herman*, 589 F.2d 1191, 1203-04 (3d Cir. 1978)).

## III. CONCLUSION

For the above-stated reasons, the Government's Motion in Limine is granted.[66] Bressi is precluded from arguing to the jury that he is immune.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[66] Doc. 389.